# JOHN HENRY WATKINS *v.* STATE OF MARYLAND

[No. 404, September Term, 1968.]

*Decided June 3, 1969.*

The cause was argued before MURPHY, C.J., and AN-
DERSON, MORTON, ORTH, and THOMPSON, JJ.

*Howard B. Gersh* for appellant.

*Thomas N. Biddison, Jr., Assistant Attorney General,*
with whom were *Francis B. Burch, Attorney General,*

*Charles E. Moylan, Jr., State's Attorney for Baltimore City,* and *Robert C. Stewart, Assistant State's Attorney for Baltimore City,* on the brief, for appellee.

PER CURIAM.

Appellant was convicted by the court sitting without a jury of unlawfully possessing heroin and cocaine and was sentenced to a total of four years imprisonment. He contends on this appeal that he was unlawfully arrested, and consequently evidence obtained from him at the time of his arrest was improperly admitted in evidence at the trial over his objection.

Detective John Sewell testified that at 9:20 a.m. on June 6, 1968, an informer, personally known to him, contacted him by phone at the police station, advising that appellant was in the 1100 block of Pennsylvania Avenue selling narcotics. Sewell testified that his informer had called him from the 1100 block of Pennsylvania Avenue; that his informer was a narcotic user, long associated with narcotic peddlers and addicts in the Baltimore area, and that the informer had supplied reliable information to the police since 1966. Sewell named two specific arrests made in March of 1968 on information obtained from his informer, a search and seizure warrant having first been obtained on the basis of the informer's information, resulting in the actual seizure of seventy-seven capsules of heroin from the arrested individuals.

Sewell testified that he knew appellant as a frequenter of the 1100 block Pennsylvania Avenue; that he had observed him at this location on a number of earlier occasions, in the company of known narcotic addicts, two of whom he specifically named. As a result of the informer's information, Sewell immediately went to the 1100 block of Pennsylvania Avenue, where he saw appellant speaking with two known addicts whom he (Sewell) identified by name. Sewell also observed that his informer was present in the area, but he did not speak to him. He also observed the appellant's activities from three to five min-

utes, at which time appellant talked to two known addicts. Sewell thought he observed something being passed between appellant and one of the addicts. Appellant was then arrested by Sewell and searched on the street, his outer clothing being patted down at that time, and his pockets searched. No narcotics were found. Appellant was then taken to the police station where he was stripped. Narcotics were recovered from the area of his crotch. They had been held in place by a ladies girdle worn beneath his shorts. A total of thirty capsules of heroin and cocaine was found.

Appellant contends that there was no probable cause to make a warrantless arrest since the reliability of Sewell's undisclosed informer was not shown; and that it was not shown that Sewell knew appellant was an addict, or that he had theretofore ever been arrested for narcotics violations. He further contends that the informer's information had never been used in the past to make a warrantless arrest—that in all prior cases the police had obtained a search and seizure warrant based on the informer's information. He also argues that as the first search on the street revealed no narcotics, whatever probable cause the police initially may have had to make a warrantless arrest was dissipated at the time of the second search in the police station.

On the facts of this case, the constitutional validity of the search and seizure manifestly depends upon the constitutional validity of appellant's arrest. Whether an arrest without an arrest warrant is constitutionally valid in a case involving, as here, a felony, necessarily turns upon whether, at the moment the arrest was made, the arresting officer or the police acting as a team had probable cause to make it—whether at that moment the facts and circumstances within their knowledge and of which they had reasonable trustworthy information were sufficient to warrant a prudent man in believing that the accused had committed or was committing a felony. And where, as here, the arrest is initiated on hearsay information received from an informer, the State, to estab-

lish its legality where challenged, must sufficiently inform the trial judge of some of the underlying circumstances from which the informer concluded that a crime was being or had been committed by the person to be arrested, and some of the underlying circumstances from which the police concluded that the informer was credible or his information reliable. See *Mullaney v. State,* 5 Md. App. 248, and cases cited at pages 253-254.

In *McCray v. Illinois,* 386 U. S. 300, the defendant was arrested on the street without a warrant for possessing narcotics. The State undertook to establish probable cause for the arrest through the testimony at trial of the arresting officers, each of whom testified in considerable detail that they had talked with an informer on the morning of the arrest who had said that the defendant was selling narcotics at a particular place and at a particular time; that the informer pointed out the defendant to the officers; and that when the defendant saw the police car, he hurriedly walked away. The officers testified that they had been acquainted with the informer for over a year, that he had supplied them with information about narcotics activities over fifteen times, and that this information had proved accurate and resulted in numerous arrests and convictions, which the officers specifically delineated in open court. In upholding the legality of the arrest, the Supreme Court held that each of the officers had testified with specificity as to what the informer actually said and why the officers thought the information was credible.

In *Hundley v. State,* 3 Md. App. 402, we stated the rule to be that information furnished to a law enforcement officer by an informer, together with the officer's personal knowledge, may serve as the basis of sufficient probable cause for a warrantless arrest for a felony and search incident thereto if the trial court is informed with specificity what the informer actually said, and why the officer thought the information was credible, and the court is satisfied such information was sufficiently reliable and reasonably trustworthy to give the officer, as

a prudent man, probable cause to believe that the accused had committed or was committing a felony.

The trial judge in the present case found as a fact from the evidence that Sewell's informer was reliable in the constitutional sense and that his information, coupled with the arresting officer's own observations corroborative of the informer's information, mounted up to probable cause supporting the warrantless felony arrest. We think the trial judge's conclusion is amply supported by the authorities. See *Spinelli v. United States,* 393 U. S. 410; *Beck v. Ohio,* 379 U. S. 89; *Draper v. United States,* 358 U. S. 307; *Wells v. State,* 236 Md. 381; *Murray v. State,* 236 Md. 375; *Rollins v. State,* 5 Md. App. 495; *Mullaney v. State, supra.* In so concluding, we have considered the arguments advanced by appellant, as heretofore set forth, but find no merit to them under the facts of this case.

*Judgments affirmed.*