## MOSES B. TAYLOR v. STATE OF MARYLAND

[No. 127, September Term, 1973.]

*Decided November 26, 1973.*

The cause was argued before ORTH, C. J., and POWERS and MOORE, JJ.

*Edward P. Murphy* for appellant.

*George A. Eichhorn, III, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General, Milton B. Allen, State's Attorney for Baltimore City,* and *John*

*Dunnigan, Assistant State's Attorney for Baltimore City,* on the brief, for appellee.

ORTH, C. J., delivered the opinion of the Court.

On 27 November 1972 the Grand Jury for Baltimore City handed up an indictment charging in the 1st count that MOSES B. TAYLOR on 21 September 1972 "feloniously with a dangerous and deadly weapon, did rob Gregory A. Brown [sometimes called Andre Brown] and violently did steal from him * * *" $930 in cash, a diamond ring, an "initial" ring, and a "man's watch." On 14 February 1973 Taylor filed in the Criminal Court of Baltimore a "Motion to Suppress" and a "Request for Hearing" thereon to be had prior to trial.[1] The Motion prayed for the suppression of property claimed to have been seized on 1 October 1972 by an unlawful search of the premises 1734 Druid Hill Avenue in Baltimore City. It also requested that a statement made by Taylor to the police be suppressed as obtained in violation of Taylor's constitutional rights. The indictment came on for trial on 22 February. Defense counsel directed the attention of the court to the Motions. We find it clear from the transcript of the proceedings that defense counsel desired a determination of the Motion to Suppress, as a preliminary matter, both as to the property seized and the statement obtained, that he made this desire known to the trial court, and that the court denied the request, reserving both the question as to the property and the question as to the statement for resolution during the trial. Trial proceeded. Taylor submitted under a plea of not guilty with the issue

---

1. The docket entries so read under that date. The originals of the motions are not included in the record submitted to us, but there are unsigned carbon copies. When the case came on for trial the original motions were not in the file before the court. Upon inquiry by the court, defense counsel said he had filed the motions with the Clerk of the Criminal Court on 13 February and had mailed a copy to the Assistant State's Attorney. The court said: "Now, I have this copy of the motion to suppress. I would suggest that we treat this as the original, you [the Clerk] will look for the original later. * * * Let's not delay the trial. I presume the Clerk has filed it somewhere, hopefully not in the wastebasket, but that does happen at times. I will treat this as the original."

before the court. He was found guilty under the 1st count and sentenced to 10 years.

I

Taylor urges that he had an absolute right to have the matter of the suppression of the property seized determined before trial. That part of the Motion which concerned the suppression of the property is governed by Maryland Rule 729.[2] Section b 1 of the Rule provides:

"When an indictment has been filed in a court or after a defendant has been held for the action of the grand jury and property seized may be used as evidence at the trial, a motion for the suppression, exclusion or return of such property on the ground that it was obtained by an unlawful search or seizure, shall be filed in the court having criminal trial jurisdiction."

This Taylor did. Section d, subtitled, "Hearing" reads in relevant part:

"1. Before Trial.

When a motion is filed pursuant to subsection 1 of section b of this Rule, at least five (5) days prior to the trial date, * * * the trial shall not commence until the motion * * * has been determined by the court.

2. Other Cases.

In all other cases the court shall have discretion

---

**2.** Rule 729, § a reads: "This Rule shall be applicable whenever property is claimed in a court to have been obtained by an unlawful search or seizure * * *." See *Cleveland v. State*, 8 Md. App. 204.

Taylor does not question the authority of the court to defer the matter of the admissibility of the statement for determination during the trial. That part of the Motion comes under Rule 725 as a motion raising a defense or objection. See § c. Section d provides:

"A motion before trial raising defenses or objections shall be determined before trial unless the court orders that it be deferred for determination at the trial of the general issue."

See *Barnhart v. State*, 5 Md. App. 222.

to determine the motion as a preliminary matter or during the trial. * * *."

The initial inquiry is whether Taylor filed his Motion "at least five (5) days prior to the trial date."

On the transcript of the proceedings below, we think it a fair conclusion that the court, the State, and the defense assumed that the Motion had been filed at least five days prior to the trial date. It is patent that on this appeal both parties so assumed. If, in fact, the filing of the Motion on 14 February 1973 (the date the docket entries show it was filed) was five days or more prior to 22 February, as the period is to be computed under the Maryland Rules of Procedure, the court below, by refusing to determine the Motion as a preliminary matter, did not comply with the provisions of Rule 729 d 1. Subsection 1 of § d does not require that a request be made for a hearing before trial on the motion. It flatly declares that when a motion to suppress is made and filed as designated, the trial *shall* not commence until the court has determined the motion. We believe that the distinction between the compulsive "shall" and the permissive "may" is not inadvertent. Our view is buttressed by the immediately succeeding subsection 2 of § d which gives the court discretion to determine the Motion as a preliminary matter or during trial in "all *other* cases." (emphasis added). We think it the clear intent of the Court of Appeals from the whole of section d that the hearing court not have the discretion with respect to subsection 1 that is expressly granted with respect to subsection 2. We conclude that an accused filing a motion pursuant to Rule 729 b 1 at least 5 days prior to the trial date is entitled as of right under § d 1 to have the motion determined before the trial commences.

Of course, the right to such a pre-trial determination may be waived, but we see no effective waiver on the record before us. Before trial commenced, defense counsel made abundantly clear that he desired to argue his motion. The court categorically asserted that it would "get to that when the warrant is offered in evidence", thus effectively

forestalling a pre-trial determination of the motion. The court also deferred ruling on the admissibility of the statement, in which defense counsel apparently acquiesced as within the discretion of the court, but this clearly was not intended by him as a waiver of a pre-trial determination of the suppression of the property seized. The court concluded:

"Let's proceed with the trial and I will reserve ruling on the motion to suppress until each bit of evidence is adduced, and then I will pass on it one way or the other at the time."

Although the court's action was wrong if the Motion was filed five days or more prior to the date of trial, the deferring of determination with respect to the suppression of the property was a proper exercise of judicial discretion if the Motion was filed less than five days prior to the date of trial, for then Rule 729, § d 2 would apply.

Rule 8 reads, *inter alia:*

"In computing any period of time prescribed by these Rules, * * * the day of the act, event, or default, after which the designated period of time begins to run is not to be included. The last day of the period so computed is to be included [with designated exceptions not here relevant]. * * * When the period of time allowed is more than seven days, intermediate Sundays and legal holidays shall be considered as other days; but if the period of time allowed is seven days or less, intermediate Sundays, Saturdays and legal holidays shall not be counted in computing the period of time."

For the period 14 February 1973-22 February 1973, 17 February was an intermediate Saturday, 18 February was an intermediate Sunday, 19 February was an intermediate legal holiday (Washington's Birthday under the Monday Holiday Act). It is clear under Rule 8 that the intermediate Saturday, Sunday and holiday are not to be counted. It is equally clear that the day of trial is not to be included, for the period prescribed by Rule 729, § d 1 is "at least five (5)

days *prior* to the trial date" (emphasis added), so the day before the trial date is within the period and the day of trial is without the period. The question is whether the day the Motion was filed is to be counted. The application of Rule 8 to the period here is the reverse of the usual application of the Rule. Usually, as the Rule envisions, there is an act, event, or default after which the designated period of time begins to run. Action then must be taken within the designated period. *For example*, Rule 567, § a, provides that a motion for a new trial shall be filed within 3 days after the reception of the verdict. It is the day of reception of the verdict which starts the running of the period, and the designated period is computed by counting forward, excluding the day the verdict was received, requiring that a motion be filed in the future within the designated period. As to Rule 729, § d 1, however, the event on which the period is based is in the future, and the period designated is computed by counting backward from that future date. In the usual application of Rule 8, its provisions with respect to act, event or default after which the designated period begins to run, operate to extend the time permitted the person against whom the designated period is to be applied; in the application of Rule 8 to the period designated by Rule 729, § d 1, the provisions operate to decrease the time permitted, if the day the motion is filed is not to be included. If the day Taylor filed the Motion is not to be included, the Motion was filed only four days prior to the date of trial. In such event the discretionary provisions of Rule 729, § d 2 were applicable, and not the mandatory provision of § d 1.

We have discussed Rule 729 d and Rule 8 in this posture to highlight the problems inherent. It may be that the Rules Committee will desire to propose amendments to clarify the Rules in this regard. In any event, to dispose of this appeal, we need not determine whether Taylor's Motion was filed at least 5 days prior to the date of trial or not.[3] Regardless of

---

**3.** Nor need we decide whether the sanction for a court's refusal to determine as a matter preliminary to trial, a motion filed pursuant to Rule 729, § b 1, at least 5 days prior to the trial date, is necessarily a reversal of the judgment. Rule 729 does not provide a sanction for the failure of the

whether the action of the court below in deferring the question of the suppression of the property seized for determination during the trial of the general issue was proper or improper, we believe that the court committed error requiring reversal of the judgment in not affording Taylor a fair hearing on his Motion during the trial.

## II

Rule 729 contemplates a hearing on the matter of the suppression, exclusion, or return of property. Section d is subtitled "Hearing". Subsection 2 of § d, pertaining to the procedure when the case is tried before a jury, provides that "the hearing on the motion, or on an objection to the introduction of evidence alleged to have been obtained by an unlawful search or seizure, shall be out of the presence of the jury." Section e anticipates that evidence may be proffered or submitted in support of or in opposition to the motion and provides that it shall be included as part of the record in event of any appeal. Taylor believes that he did not receive such a hearing. We share his belief.

At the guilt stage of the trial Brown, the victim, recounted the circumstances of the robbery during the presentation of the State's case. He testified that $936 in cash, two rings and a watch were stolen from him. He was shown and identified the watch and the State offered it as Exhibit No. 1 for identification. Defense counsel objected. The court pointed out that it was offered only for identification and not received in evidence. Defense counsel said: "I still think that at this point we are getting to the point where I would like to be heard on my motion. I think

---

trial court to comply with its § d 1. Taylor urges that prejudice to him is inherent as "offensive to his given constitutional rights of effective assistance of counsel and a fair and impartial trial," although he does not elaborate thereon. It may be that even if a pre-trial determination is improperly denied, a denial of the motion to suppress for valid reasons upon hearing during the trial on the merits could not so prejudice an accused that a reversal of the judgment would be compelled, although it seems that under such view § d 1 would be emasculated. There are times when the exclusion of challenged evidence as improperly obtained makes it impossible for the State to prove the charge. In such instance, the pre-trial granting of the motion to suppress would shield the accused from the additional expense, trouble and stigma of a lengthy trial.

that —." The court interjected: "Not where it's only offered for identification. It's not in evidence. It's just being identified. * * * This is not evidence. I will not consider that as evidence at all at the moment." Brown was shown and identified a ring bearing the initials "A.B." as his property. It was admitted for identification over objection.

The State called Detective Harold Rose, Criminal Investigation Division, Homicide Squad, Baltimore City Police Department, to testify in its behalf. He said that he arrested Taylor on 1 October 1972 about 5:30 a.m. He was requested to explain the circumstances surrounding the arrest. Defense counsel objected. The transcript reads:

> "THE COURT: All right. Why do you object? I can't imagine what is objectionable about it so I'd like to hear it.
>
> MR. MURPHY [Defense Counsel]: I think we're going to go into now a warrant and search and seizure and I am objecting to any identification at this point to preserve my right —
>
> THE COURT: You see, I don't have the impression that the rest of you do. I don't know anything about a warrant. The question is simply as to the circumstances under which the arrest was made. I may have to strike out some evidence about the warrant, but I assume there wasn't because I heard nothing from the State's Attorney. I will overrule the objection."

Rose explained that he was in the process of investigating a "double murder" and received certain information, including a name. "[A]s a result of doing a check on this name, [I] learned that there was an active assault and robbery warrant for this subject. With this information and with the information I had received I also drew up a search and seizure warrant for that address." The State offered the search warrant for identification and defense counsel objected. The court said: "You are objecting to marking the warrant for identification? That is extreme caution, it seems to me; this is not evidence. I will not hear the warrant, I will

not hear anything that is in it, but I will let it be marked for identification." The State then offered the warrant into evidence. The court asked defense counsel if he had an objection to the warrant. Counsel replied that he had no objection to the warrant itself. "I have filed a motion to suppress certain evidence. My objection goes to the evidence, not to the warrant." The court, however, considered the objection as going to the warrant and sustained it — "The warrant is not properly proven at this point." Rose thereupon identified the warrant as one he drew which was signed by a judge of the District Court and directed to Taylor and 1734 Druid Hill Avenue. He said it was "activated" at 5:30 a.m. on 1 October 1972, "at which time numerous members of C.I.D. and uniform went to that location and enforced the warrant." The State again offered the warrant into evidence. Defense counsel objected and the objection was overruled. The court examined the warrant and the application for it and asked why the information in the affidavit was not probable cause for the issuance of the warrant. Defense counsel replied:

> "[Y]our Honor, as the Court is well aware now, we are now concerned with a double homicide in this case. As a matter of fact, no charges have ever been placed against this man for a double homicide. We are concerned today with an alleged assault and robbery. The warrant that the Court has read specifically describes what the officers were looking for at the time they served the search and seizure warrant at the time they arrested the defendant. The State will attempt at some point, I am sure, to introduce the ring and the watch which had previously been introduced for identification purposes only. My point is that the ring and the watch as they relate to this defendant, and in reference to that warrant, were improperly seized." [4]

---

4. The warrant commanded the search of Taylor and the premises 1734 Druid Hill Avenue and the seizure of "Two — ·38 Cal. revolvers — 1 Silencer

The court overruled the objection, stating, "I will admit the warrant." It was received in evidence.

Rose recounted the circumstances of the arrest of Taylor and then was asked to identify the watch which had been admitted for identification. He said he had not seen it recovered but that it had been handed to him by Detective David Bruce. He was then asked if he could identify the ring. Defense counsel objected and the court said the testimony went to identification. "They are not in evidence, not yet." It was elicited that Bruce gave the ring to Rose.

When Bruce testified with respect to the watch and ring, he identified them as found by him on the third floor of the premises 1734 Druid Hill Avenue "as a result of searching relative to another offense. * * * And when we searched the area, I moved a dresser drawer to look for guns because we had received information that it was more than one gun on the premises and as a result of me moving the dresser drawer, down on the floor in the corner was the watch and ring, possibly two rings — I know it was a watch and a ring. The ring had A.B. on — marked on the ring itself." The transcript reads:

> "MR. DUNNIGAN [Assistant State's Attorney]: The State would offer these as State's Exhibit No. 1 and 2 into evidence.
>
> MR. MURPHY: Objection.
>
> THE COURT: Do you raise any question of chain of custody?
>
> MR. MURPHY: No.
>
> THE COURT: Your objection is overruled.
>
> MR. MURPHY: May I be heard, your Honor?
>
> THE COURT: On what?
>
> MR. MURPHY: Well, all of the testimony in the case, your Honor, has been that they went to this

---

— Fruits and Instrumentalities of the Crime in question." The crime in question was described as "The Homicide and Armed Assault and Robbery of Robert Jordan w/m 24 yrs. — 438 N. Robinson St. and Marie Jordan w/f — 45 yrs. — 438 N. Robinson St."

premises with a search and seizure warrant. The search warrant specifically described what they were looking for with reference to two homicides.

THE COURT: Why wouldn't that be admissible?

MR. MURPHY: Because, what is unusual about a watch and ring? You can find — you can seize contraband, you can seize instrumentalities.

THE COURT: I will overrule your objection, Mr. Murphy, you have an exception. Let's get on. Next question.

MR. MURPHY: I would, for the record, like to put the reasons on —

THE COURT: No, I have heard your reasons. That is enough. Under the rule you are not allowed to give reasons unless the Court asks for them. I have heard some of the reasons, but, which are not valid, and I don't want any more. Let's get on. Next question."

We can only conclude from this record that Taylor was improperly denied the opportunity to have a fair hearing on the motion to suppress the watch and ring. Defense counsel had been consistently stultified in his efforts to give the reasons for the motion, to present evidence regarding it, and to argue it. At the time the court ruled, there was in evidence, over objection, a search and seizure warrant related to Taylor but not to the crime for which he was being prosecuted. There was nothing in the warrant or the application for it which connected the watch and ring to the homicides or authorized the search for or the seizure of those articles. There was, at this point, a vague suggestion in Rose's testimony that there was "an assault and robbery warrant on file" for a man who apparently was Taylor, but whom he was accused of robbing, and when, and what was stolen, were not brought out.[5] The short of it, and this seems

---

5. Subsequent to the ruling by the court denying the motion to suppress, Bruce, a member of the Homicide Unit, indicated that he went to 1734 Druid Hill Avenue "to serve an arrest warrant and had a search and seizure warrant [for the homicides] as well." He said the arrest warrant was "that

to be the substance of what defense counsel now says he desired to show below on the motion, is that it was not established that the police had reasonable grounds to believe that the watch and ring were the fruits of a crime or evidence of a crime and that they were not in themselves contraband. The search warrant under the authority of which the police were lawfully on the premises did not command or permit the seizure of those articles, and they were in no event seized as incident to an arrest.[6] Therefore, Taylor asserts, the seizure of the watch and ring was unreasonable and constitutionally prohibited. We think he should have been afforded a fair opportunity so to show at a hearing on his motion. Because he was not, we reverse the judgment and remand for a new trial. We point out that our action is not to be taken as any indication that the challenged seizure was or was not constitutionally reasonable. That determination is for the court below upon a plenary hearing on the motion to suppress.

## III

Taylor contends that the trial court erred in admitting an oral statement by him. The basis of Taylor's allegation of error is that the statement was not voluntarily made. We

charging the defendant with armed assault and robbery of Mr. Brown. * * * It was a warrant on file not obtained by the Homicide Unit." The court asked the prosecutor: "[W]hy do you keep the Court in such a state of confusion, that if an arrest was made pursuant to an arrest warrant and I don't see the warrant? * * * Don't tell me the warrant has been lost or destroyed." The prosecutor told the court the warrant was lost. The court said: "I asked the question and I have gotten the answer, the arrest warrant is not available. * * * I presume the Judge in the District Court kept no record of it — nobody has any record of it. It's not available. All right." There was no evidence tending to show that Bruce in fact knew what was alleged to have been stolen from Brown and more particularly that a watch and ring has been taken from the victim. Nor was there any indication that the arrest warrant listed the watch and ring as stolen.

There is in the record submitted to us arrest warrant No. 044043 issued by a commissioner of the District Court of Maryland on 22 September 1972, on the sworn application of Brown alleging that Taylor robbed him with a deadly weapon on 21 September and stole from him $930, a diamond ring, an initial ring and a watch. The warrant is certified by Rose as executed on 1 October 1972 at 6:00 a.m. at 1734 Druid Hill Avenue. As indicated, it was not produced at the trial.

6. Taylor fled to the house next door to 1734 Druid Hill Avenue and was arrested there.

resolve this point for the guidance of the court in the event of a retrial.

During the trial of the general issue there was a hearing on the admissibility of the statement. Rose testified as to the circumstances surrounding the interrogation of Taylor. He and Bruce questioned Taylor in an interrogation room, "a little room", in which Taylor and the detectives were seated at a table. Taylor was free to smoke "or do whatever he wanted to, within our confines there." Rose ascertained that Taylor could read and write and then advised him of his "constitutional rights." "He was advised of his rights . . . off of our standard Miranda form, * * *." The Explanation of Rights Form embodies seven statements, numbered consecutively, including a waiver. Following each statement is a blank provided for the initials of the person being advised. Rose testified that he read each statement to Taylor, asked Taylor if he understood what had been read and he acknowledged that he understood by stating that he did and placing his initials, M.T., on [the blank]. We note that the first five statements set out on the form include all of the constitutional safeguards set out in *Miranda v. Arizona*, 384 U. S. 436, and that the blank following each statement was initialed. To the question, "Do you understand your rights?" Taylor wrote, "Yes MT"; to the question "Do you want a lawyer present at this time?" Taylor wrote "No, MT". Statement 6 constitutes a waiver. It reads ". . . I have read this explanation of my rights and I understand this explanation. I hereby declare, with full knowledge and understanding of my rights, that I do not want a lawyer at this time. I am willing to answer questions and I wish to make a statement." To this, Taylor placed his initials, "MT". Statement 7 is to the effect that no promises or inducements had been offered, no threats made, no intimidation attempted and that he had not been forced to make a statement. "The decision to make a statement is entirely free and voluntary on my part." It was initialed "MT". At the bottom of the Form appears the signature, Moses B. Taylor, witnessed by Bruce and Rose. Rose said that no force, inducements, or promises were used to encourage

Taylor to make a confession. He stated that Taylor made no requests for a lawyer or to make a telephone call or "anything else. He appeared to be wide awake and coherent and understanding everything that was going on." On cross-examination Rose denied that Taylor was interrogated dressed only in his underwear and stated, "I can't describe the clothing he had on, but he had pants on. I believe he had tennis shoes and he had a shirt. . . . He was allowed to put his clothes on before the arriving of the cruising patrol." Rose also denied that he threatened to charge Taylor's girl friend (Rosalie Stewart) with harboring a fugitive.

Taylor took the stand in his own behalf "for the limited purpose of testifying relative to the facts and circumstances surrounding the interrogation." Taylor claimed that he was not allowed to dress before the interrogation and that he was dressed only in the underclothes he was wearing when arrested. In response to his counsel's question of why he made a "confession", Taylor responded "because he [Rose] threatened to give my woman [Miss Stewart] ten years."

Based on the evidence presented on Taylor's motion to suppress the confession, the court found ". . . that the statement was given to the witness [Rose] by the defendant freely and voluntarily and after being fully advised of his rights under the *Miranda* decision, and indeed under the Constitution of the United States, and of the State of Maryland."

We believe that the reading of the statements on the Explanation of Rights Form and Taylor's recognition of comprehension meet fully the responsibility of the police, as required by *Miranda* to apprise a suspect in custody of his constitutional safeguards. Our independent constitutional appraisal of the record, as is our duty, affirmatively reveals that Taylor's decision to waive his "Miranda rights" and make a statement was knowingly and freely done and that the statement was voluntarily given. *Sabatini v. State,* 14 Md. App. 431; *Fowler v. State,* 6 Md. App. 651. We hold that the trial court did not err in admitting the statement in evidence.

## IV

In view of our reversal of the judgment, we make no determination of the sufficiency of the evidence to sustain the conviction.

*Judgment reversed; case remanded for a new trial.*