# RUDOLPH ISAAC LAWSON, SR. *v.* STATE OF MARYLAND

[No. 640, September Term, 1974.]

*Decided April 7, 1975.*

538

The cause was argued before MORTON and MENCHINE, JJ., and FREDERICK J. SINGLEY, JR., Associate Judge of the Court of Appeals, specially assigned.

*Carl Warren Greifzu, Assigned Public Defender,* for appellant.

*David B. Allen, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General, Arthur A. Marshall, Jr., State's Attorney for Prince George's County* and *William Spellbring, Assistant State's Attorney for Prince George's County,* on the brief, for appellee.

MENCHINE, J., delivered the opinion of the Court.

Rudolph Isaac Lawson, Sr. was convicted in a bench trial in the Circuit Court for Prince George's County of possession of heroin in sufficient quantity to reasonably indicate an intent to distribute the same. He was sentenced to a term of 15 years imprisonment. He makes four contentions on appeal, namely:

1. That the trial court denied appellant's right to a pre-trial hearing of his motion to suppress evidence in violation of Rule 729.
2. That appellant was subjected to constitutionally unreasonable search.
3. That appellant was entrapped, and
4. That hearsay, inadmissible as substantive evidence, was in fact relied on by the trial court in its determination of guilt.

*Alleged Denial of Pre-Trial Hearing*

The record does not support the contention that there was such denial. It is true that the record shows that a Motion to

Suppress Evidence was filed on December 7, 1973 and that trial occurred on May 1, 1974. Maryland Rule 729 in pertinent part reads as follows:

"b. *Venue.*

1. After Indictment.

When an indictment has been filed in a court or after a defendant has been held for the action of the grand jury and property seized may be used as evidence at the trial, a motion for the suppression, exclusion or return of such property on the ground that it was obtained by an unlawful search or seizure, shall be filed in the court having criminal trial jurisdiction.

\* \* \*

"d. *Hearing.*

1. Before Trial.

When a motion is filed pursuant to subsection 1 of section b of this Rule, at least five (5) days prior to the trial date, or if a petition is transferred pursuant to subsection 3 of section b of this Rule, the trial shall not commence until the motion or petition has been determined by the court."

It is patent, accordingly, that appellant was entitled to a determination of the validity of a seizure before commencement of the trial. *Taylor v. State,* 19 Md. App. 386, 311 A. 2d 468. In *Taylor,* however, we also had said at 389-90 [471]:

"Of course, the right to such a pre-trial determination may be waived, but we see no effective waiver on the record before us. Before trial commenced, defense counsel made abundantly clear that he desired to argue his motion. The court categorically asserted that it would 'get to that when the warrant is offered in evidence', thus effectively forestalling a pre-trial determination of

the motion. The court also deferred ruling on the admissibility of the statement, in which defense counsel apparently acquiesced as within the discretion of the court, but this clearly was not intended by him as a waiver of a pre-trial determination of the suppression of the property seized."

In the subject case, the record clearly shows a waiver of that right to preliminary determination. There was not the slightest indication that defense counsel desired determination of the motion to suppress as a preliminary matter. To the contrary, initial reference to the pending motion to suppress by defense counsel was made in the following words, "* * * there is still pending before the Court a motion to suppress evidence, *which I take will be heard in conjunction with this trial*." (Italics supplied) Thereafter, the trial judge said, "* * * we will cover that as we proceed on the trial." The only response by trial counsel was, "Yes, Sir." At a later point in the trial, defense counsel, objecting to a ruling by the trial court admitting the contraband into evidence, said:

|  |  |
|---|---|
|  | "Well, my point is that all the evidence isn't in. I don't think the Court ought to rule — |
| THE COURT: | What other evidence do we have? |
| MR. ROSENBERG: | I haven't examined this witness. *We are joining a non-jury trial with the motion to suppress evidence, and this is how this matter is coming up procedurally.* (Emphasis added) |
| THE COURT: | All right. We will then reserve our ruling on the admissibility of State's 1 |

(the seized evidence) until we get all of the evidence in the same posture as Exhibit 1 is in at this time, and handle the problem then.

MR. ROSENBERG:      Thank you."

These circumstances, shown by the record, demonstrate "an intentional relinquishment or abandonment of a known right or privilege." *Johnson v. Zerbst*, 304 U. S. 458, 464, 58 S. Ct. 1019, 1023, 82 L. Ed. 1461, 1466 (1938).

### The Arrest and Search

On August 3, 1973, Rudolph Isaac Lawson, Sr., the appellant, was arrested by police officers in Prince George's County without a warrant. A search of the motor vehicle in which appellant was a passenger produced a handgun, found in the glove compartment. A search of the person of the appellant at the police station revealed "a clear plastic baggie which had several tinfoil packets inside," found within his "jockey undershorts." The substance in the packet subsequently was identified as forty-five decks of heroin. Appellant contends that the arresting officer did not have probable cause for the arrest and that the subsequent searches were unreasonable and unlawful.

In Collins v. State, 17 Md. App. 376, 302 A. 2d 693, we said at 383-84 [697-98]:

" 'A police officer may arrest a person without a warrant if he has probable cause to believe that a felony has been committed or attempted and that such person has committed or attempted to commit a felony whether or not in his presence or view.' Code, Art. 27, § 594 B (c). It is the existence of probable cause at the time of the arrest which is the measure of the legality of the arrest. *Evans v. State*, 11 Md. App. 451. Probable cause may be based on information collectively within the

knowledge of the police. *Hebron v. State,* 13 Md. App. 134. So even when an officer acting on a direction to arrest was personally without sufficient probable cause to justify the arrest, it may be shown that information within the knowledge of the police team constituted probable cause. *Thompson v. State,* 15 Md. App. 335. In such case, of course, the State is required to produce the evidence on which the officers initiating the arrest acted. *Id.* The statute here considered is declaratory of the common law rules of arrest without a warrant, and it does not affect the established definition of probable cause, *Rife v. State,* 9 Md. App. 658, which has the same meaning it had under the common law, *Wescott v. State,* 11 Md. App. 305. The rule of probable cause is a non-technical conception of a reasonable ground for belief of guilt, requiring less evidence for such belief than would justify conviction, but more evidence than that which would arouse mere suspicion. *Cuffia v. State,* 14 Md. App. 521. Probable cause exists when the facts and circumstances within the knowledge of the arresting officer or the police team, or of which they had reasonably trustworthy information, are sufficient to warrant a reasonably cautious man in believing that a crime had been committed by the person arrested. Only the probability, and not a *prima facie* showing of criminal activity, is the standard for probable cause. *Hebron v. State, supra; Wescott v. State, supra.*"

We have pointed out that such knowledge may be derived from any source "perceptible to the officer's senses, whether they be visual, auditory, or olfactory." *Johnson v. State,* 8 Md. App. 187, 191, 259 A. 2d 97, 99.

*Facts and Circumstances Within the Knowledge
of the Police*

At the time of the arrest Robert F. Derfler, a police officer
of Prince George's County for four years, had worked in
undercover narcotics and dangerous drugs investigations
during the last one and one-half years of that service. At the
time of the subject incident Derfler's "investigations in
Maryland had been exhausted as far as the group of people
[he] was running with, [he] had reached the top." Derfler
testified that after he had been advised by one John Bryson,
a known addict, that he was going "to cop drugs for himself"
he had gone with him to the Loop Bar in Mt. Pleasant,
District of Columbia, hoping he "could get introduced to
people that were selling the heroin then I would in turn turn
it over to the Metropolitan Police Department."

While at the Loop Bar in Mt. Pleasant, one Bruce Dent, a
known drug addict, asked Derfler if he was "looking," "a
term narcotics users use to mean if you're waiting if you
would like to purchase heroin." Acknowledging that he was,
Derfler, directed by Bruce Dent and accompanied by the
latter's brother Norman, also an addict, then drove to 14th
Street and Florida Avenue, N.W., in Washington, D. C.
When Derfler went into the District of Columbia he did not
know that he would meet Dent, or that his path would cross
that of Lawson. Derfler was in no position to buy drugs in
the District, having only about $4.00 on his person. Derfler
denied any pre-arrangement to get or try to get Lawson "to
come out to Maryland," saying, "it was just an opportunity
at the time." He said that he knew Lawson's home had been
under surveillance on suspicion that appellant dealt in
narcotics, but the basis of knowledge for that suspicion was
not disclosed at trial. It was admitted that the surveillance
had produced no evidence that Lawson in fact was engaged
in the drug traffic.

Upon arrival at 14th Street and Florida Avenue, Bruce
Dent left the Derfler vehicle and approached a parked
vehicle containing a female behind the wheel; a negro male
in the front passenger seat; and Rudolph Isaac Lawson, Sr.,

the appellant, in the rear seat. At that point in time, it is quite plain, nothing more than conjecture indicated that Lawson was the supply source of the addict Bruce Dent.

The State contends and the appellant disputes that the subsequent events shown by the following quotations from the record, provide the probable cause essential to a lawful arrest:

"Q And what happened then, after he approached Mr. Lawson?

A He was conversing with Mr. Lawson. He then came back to my vehicle and stated that — he said Rudy is only selling spoons at a hundred fifty dollars.

Q What happened then?

A I advised him that I had no money on me to purchase that amount, that he would have to go into Prince George's for me to get the money. The suspect then went back, conversed between Mr. Lawson, and he then came back to me and said, 'How many spoons do you want?'

Q And then what happened?

A I told him, 'Three spoons.'

At this time Mr. Dent held his hand up with three fingers, indicating that, you know, that I wanted the three spoons. At this time Mr. Lawson nodded his head like yes, all right.

Q Now, Detective, you are using the term 'spoons.' What is a spoon?

A It's a level teaspoon of heroin.

Q After these conversations, what happened next?

A Mr. Dent got in the vehicle and said that Rudy would follow me into Maryland to make the sell.

Q And then what happened?

A The vehicle was occupied at this time, that Mr. Lawson was in, by a negro female driving the

car, a negro male on the passenger side, and Mr. Lawson was sitting on the right rear, and another negro male was sitting on the left side of the rear.

The vehicle then, which Mr. Lawson occupied, pulled up next to me. At this time I gestured him to slow down, and said to Mr. Lawson, 'I have to make a phone call first to make sure the money is all right.' Mr. Lawson said, 'Fine.'

We then proceeded towards Prince George's County, Maryland. I pulled in at a Shell station to make a phone call.

Q And when you made the phone call whom did you call?

A At this time I called Detective Brown of the Vice Control Division, Prince George's County, Maryland.

Q And what did you tell Detective Brown?

A I advised Mr. Brown that [f]ollowing my car would be a white Buick, D. C. registration 923-955, that I would be coming up Route 50 towards Landover Road, Route 202, and informed to hurry up and get set up. That, you know, that this car, that Mr. Lawson, from my indication of the conversation, the gestures with him, that he would have heroin.

Q You made your call from —

A And just before we were getting into Maryland.

Q And that's when you notified Detective Brown that you had Mr. Lawson, that you suspected that he or somebody in the car may have drugs on him.

A Yes.

Q Would it be fair to say that you suspected — you used the words that you suspected — that that was the case?

A  At the time with the conversations, and his willingness to go into Maryland to sell the drugs, and in large quantities, the only reason would be for what they call a ripoff, if they would hold me up for my money; and since I didn't have any money on me at the time, and he was willing to go into Maryland to sell me the drugs in spoons, in my own mind I was positive.

THE COURT:  You were positive in your own mind that he had the heroin on him.

THE WITNESS:  That he had the drugs, yes, sir."

On this evidence the trial court denied appellant's motion to suppress, holding that there was probable cause for the arrest and that the search of the vehicle and the person of the appellant were reasonable. We agree.

In the time reference of the arrival of the group at 14th Street and Florida Avenue, Dent had not shown his basis of knowledge for his implicit belief that narcotic drugs could be obtained at that location. Nor was there, at that point in time, any evidence surpassing the purest speculation, that Lawson was in possession of narcotics or that he would supply them to Derfler. Such deficit was, however, short lived. Dent's basis of knowledge quickly became apparent. The trustworthiness of his information quickly was confirmed by the actions and the words of Lawson himself.

The apothegms "actions speak louder than words" and "speech is the image of actions," singly and in unison attest to the probability that Lawson possessed heroin on his person or in the vehicle and that he attempted to distribute the same to Derfler within the State of Maryland.

So compellingly trustworthy was the intermeshed discourse-charade, that both Derfler and Lawson were persuaded to "suit the action to the word, the word to the action." [1]

---

1.  Hamlet Act III Sc. 2.

At the time of the arrest, the police team had probable cause to believe that Lawson was in possession of heroin in substantial quantity on his person or within his vehicle and that he was attempting to distribute the same to Derfler. The search of the vehicle was justified either on the basis of exigency under the so-called "automobile exception" or as a legitimate "search incident" to that arrest. *See: Stanley v. State,* 19 Md. App. 507, 510, 313 A. 2d 847, 849. The search of the person of Lawson, incident to his lawful arrest, was not unreasonable. *Franklin v. State,* 18 Md. App. 651, 663, 308 A. 2d 752, 760. The fact that the initial pat down search had not disclosed contraband, the same having been discovered at a strip down search at the station house, does not vitiate the latter search. *Watkins v. State,* 7 Md. App. 151, 153, 253 A. 2d 925, 926.

## *Entrapment*

The trial court found that there was no inducement by Derfler to Lawson to commit the subject offense. The record supports the finding. In *Schuman v. State,* 19 Md. App. 400, 311 A. 2d 460, we said at 404-05 [463], "Generally, however, the defense of entrapment is not available to an accused where the law enforcement officer, acting in good faith for the purpose of discovery or detecting crime, merely supplied the opportunity for the commission of the crime to one who already possessed the requisite criminal intent." The facts of the subject case bring it quite clearly within that general rule.

## *Use of Hearsay as Substantive Evidence*

Appellant contends that hearsay evidence admissible only upon the question of probable cause improperly was used by the trial judge as substantive evidence in his determination of guilt. The contention is made because the trial judge, prior to announcement of the guilty verdict, had said, *inter alia:*

"I can only conclude that the State's evidence convinces me that indeed the quantity of heroin,

forty-five decks, based along with the *uncontradicted testimony of the nature of the arrangement made in the District of Columbia,* indicates that there was sufficient controlled dangerous substance found on the person of the defendant, along with the arrangements made in the District of Columbia, to indicate an intent to distribute."

The trial judge subsequently added:

"* * * being satisfied beyond a reasonable doubt of the sufficiency of the amount of heroin, tied into the *discussions and arrangements made* in the District of Columbia, that indeed the defendant must be concluded to be guilty of Count 1, possession of the controlled dangerous substance with intent to distribute." (Italics supplied.)

Assuming, without deciding, that all of the evidence relating to the incident at 14th Street and Florida Avenue was considered by the trial judge on the substantive issue of the guilt of the accused, we are persuaded that it was quite permissible for him to do so. Most of the testimony of Derfler was not hearsay at all, i.e.

1. The *fact* that Dent approached and spoke to Lawson.
2. The *fact* that Lawson responded.
3. The *fact* that Dent returned to and spoke to Derfler.
4. The *fact* that Derfler replied to Dent.
5. The *fact* that Dent held up three fingers.
6. The *fact* that Lawson nodded his head in response to Dent's gesture.
7. The *fact* that Lawson and Derfler conversed.
8. The *fact* that the Lawson vehicle followed that of Derfler.
9. The *fact* that the Lawson vehicle stopped when Derfler made his telephone call to the police.
10. The *fact* that the Lawson vehicle continued to follow that of Derfler after that telephone call.

In short, no part of the entire incident or event was hearsay except the precise words uttered by Lawson to Dent. That an act itself may serve as the functional equivalent of words to communicate thought has been recognized since the dawn of recorded history. An admission on the basis of defendant's conduct may be allowed in evidence if such conduct tends in some way to connect him with the crime charged. Wharton's Criminal Evidence, 13th Ed., § 705.

We are persuaded that the circumstances of the subject case are so extraordinary as to fall within the rule discussed in 4 Wigmore, Evidence (Chadbourn rev. 1972) Ch. 37. In § 1048 (p. 4) Wigmore says:

> "(2) But, regarded from the point of view of the *legal rules of admissibility*, the party's extrajudicial statements, like all other extrajudicial statements, are met and challenged by the hearsay rule (§1361 *infra*). How is it, then (since they are nevertheless admissible against the party-opponent), that they are able to pass the gauntlet of the hearsay rule?

> "Very simply. The answer is that the party's testimonial utterances do *not* pass the gauntlet of the hearsay rule when they are offered *for* him (unless they can satisfy some exception to that rule); but that they do pass the gauntlet when they are offered *against* him as opponent, because he himself is in that case the only one to invoke the hearsay rule and because he *does not need to cross-examine himself.*

> "The theory of the hearsay rule is that an extrajudicial assertion is excluded unless there has been sufficient opportunity to test the grounds of assertion and the credit of the witness, by cross-examination by the party against whom it is offered (§1362 *infra*); e.g., if Jones had said out of court 'The party-opponent Smith borrowed this fifty dollars,' Smith is entitled to an opportunity to cross-examine Jones upon that assertion. But if it is Smith himself who said out of court, 'I borrowed

this fifty dollars,' certainly Smith cannot complain of lack of opportunity to cross-examine himself before his assertion is admitted against him. Such a request would be absurd. Hence the objection of the hearsay rule falls away, because the very basis of the rule is lacking, viz., the need and prudence of affording an opportunity of cross-examination.

"In other words, the *hearsay rule is satisfied*; Smith has already had an opportunity to cross-examine himself (§§1371 and 1372 *infra*); or (to put it another way) he now as opponent has the full opportunity to put himself on the stand and explain his former assertion."

In § 1052, he adds:

"§1052. Express and implied admissions. An admission may be *express* or *implied*; i.e., it may take place in the form of uttered words of statement, or in the form of conduct from which is inferred a belief that would be represented by admissory statement."

In § 1060, he explains:

"§1060. Admissions implied from conduct; sundry instances. Whether from a certain express utterance some further statement is to be implied as necessarily included, or whether in certain conduct the utterance of a certain statement may be implied, is so much a question .of the circumstances of each particular instance as hardly to become the legitimate subject of precedents."

Under the facts of this case we find the conduct of the appellant to be such that the statements attributed to him may be implied therefrom.

We find no error.

*Judgment affirmed.*