540 A.2d 490

**Victor KIRKLAND**

v.

**STATE of Maryland.**

**No. 261, Sept. Term, 1987.**

Court of Special Appeals of Maryland.

May 4, 1988.

Certiorari Denied Aug. 29, 1988.

**50**

Clarence W. Sharp, Assigned Public Defender, Annapolis (Alan H. Murrell, Public Defender, on the brief, Baltimore), for appellant.

Cathleen C. Brockmeyer, Asst. Atty. Gen. (J. Joseph Curran, Atty. Gen., Kurt L. Schmoke, State's Atty. and Gary Honick, Asst. State's Atty., Baltimore City, on the brief), Baltimore, for appellee.

Argued before BISHOP, ALPERT and KARWACKI, JJ.

BISHOP, Judge.

Victor Kirkland, appellant, was convicted by a jury in the Circuit Court for Baltimore City (Bothe, J.) of first degree murder (MD.ANN.CODE art. 27, § 407), use of a handgun in a crime of violence (MD.ANN.CODE art. 27, § 36B(d)) and simple assault.[1] Kirkland received a life sentence for the first degree murder conviction, a ten year consecutive sentence for the handgun conviction and a five year consecutive sentence for the assault conviction.

Kirkland presents two issues on appeal:

I.  Whether the failure to suppress his pre-trial statements constitutes reversible error?

II.  Whether a statement related by a State's witness constituted inadmissible hearsay?

### FACTS

On August 31, 1985, at about 7:30 p.m., Andrew Church lay mortally wounded from a single gunshot wound to the stomach.  Another victim, a bystander, survived with a single gunshot wound to the leg.

In the minutes preceding the attack, Andrew Church and his brother, Xavier, argued with two other men over a drug deal that had gone sour.  The argument occurred on a Baltimore City street near Clifton Park.  Kirkland approached the argument from an adjoining alley and stopped to listen because he knew everyone involved.  It is undisputed that Kirkland shot and killed Andrew Church and that he wounded the bystander.

---

1.  Kirkland was also convicted of wearing, carrying and transporting a handgun contrary to MD.ANN.CODE art. 27 § 36B(b), but this offense was merged at sentencing into the handgun conviction.  The State does not challenge the validity of the ruling and it is not now before this Court.

At trial, Kirkland's defense was primarily one of self-defense.  He testified that he attempted to remove one of the participants from the argument and that Xavier Church asked him, in rather colorful violent language, what he had to do with the argument.  Kirkland said that in almost the same instant, he saw Xavier reach for a gun but that he was able to shoot first.

## I.

### *The Statement*

Kirkland filed a pretrial motion to suppress two statements he had given to the police.  The State did not seek admission of the first statement at trial.  As to the second statement, which Kirkland gave to Detective Laverne Day and Detective Tyrone Francis, the trial court granted the suppression motion but only as to those portions in which Detective Francis had an involvement.

Prior to interviewing Kirkland, Detective Day advised him of his rights and, after she was satisfied appellant understood, she took Kirkland's statement.  Detective Day reduced the statement to writing and Kirkland initialed each answer.  Kirkland, however, refused to sign the statement and asked for the assistance of an attorney.  The interrogation stopped, but before an attorney arrived, Detective Francis interviewed Kirkland and the statement was later signed and modified as to one answer previously initialed.[2] At trial, Kirkland contended that his statement was involuntary because he was suffering from severe narcotic withdrawal and that Detective Francis had "threatened, promised or coerced" him into signing the statement.  Specifically, Kirkland alleged that he had injected heroin and smoked a large quantity of cocaine the night before his arrest and

---

2.  The trial court suppressed this portion of Kirkland's statement and any possible violation of *Edwards v. Arizona,* 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981) and *Bryant v. State,* 49 Md.App. 272, 431 A.2d 714 (1981), *cert. denied,* 456 U.S. 949, 102 S.Ct. 2020, 72 L.Ed.2d 474 (1982), is not at issue.

that he was feeling ill from cramps and chills during the interviews with Detective Day and Detective Francis. Kirkland also testified that Detective Francis induced him to sign his statement by showing him a glassine bag which appellant assumed contained heroin.

Detective Day testified at trial that Kirkland showed no visible signs of drug withdrawal and that he did not tell her he was suffering from withdrawal. Detective Day also testified that she did not threaten, promise or coerce Kirkland into giving the statement. Detective Francis did not testify.

Kirkland relies on *Streams v. State*, 238 Md. 278, 208 A.2d 614 (1965), as support for his argument that since the State failed to rebut his testimony concerning Detective Francis' conduct, it failed to meet its burden of establishing the voluntariness of the statement. Kirkland further argues that the State's failure to rebut renders the entire statement inadmissible, not just the portion relating to Detective Francis. We disagree.

Unsigned confessions or statements of an accused, if made voluntarily, are admissible even though the accused refuses to sign. *Mouzon v. State*, 9 Md.App. 57, 60–61, 262 A.2d 588 (1970), *cert. denied*, 258 Md. 729 (1970). In *Mouzon*, the Court said:

> That appellant may have repudiated the statement immediately after voluntarily making it, would no more render it inadmissible than if he repudiated it at the trial. At most, such repudiation would go to its weight, not to its admissibility.

*Id.* at 61, 262 A.2d 588. The statement offered into evidence by the State did not contain anything that resulted from Detective Francis' interrogation of Kirkland. Kirkland's allegation that Detective Francis made a promise to him is relevant only to Detective Francis' conduct and not that of Detective Day. Exclusion is not required when all portions of the statement alleged to be involuntarily given

are suppressed. *See Streams, supra; Hillard v. State,* 286 Md. 145, 406 A.2d 415 (1979); *Pharr v. State,* 36 Md.App. 615, 375 A.2d 1129 (1977).

## II.

At trial, Andrew Church's sister, Robin Church, testified that shortly before her brother's death, two unidentified men came to her home looking for her brother. Robin Church did not identify Kirkland as being one of the two men; however, Xavier Church testified that Kirkland was one of the two men. Robin Church testified that one of the men, she could not be sure which one, said: "I was going to kill this M.F. if he didn't have my money by a certain time." Although there was no direct testimony at trial that it was Kirkland who made the statement, the fact that he did kill Andrew Church allows a fair inference that he was the one who made the statement. The trial court admitted the statement over Kirkland's objection. He now argues the statement should not have been admitted because it was hearsay and did not come within any recognized exception.

The State did not indicate at trial the purpose for which it offered the statement but it is clear that the statement was admissible under any of three theories: (1) as a state of mind exception to the hearsay rule; (2) as circumstantial evidence of declarant's subsequent conduct; and (3) as an admission under an exception to the hearsay rule.

### (1)

If Kirkland's statement was offered to prove the truth of the matter asserted, it would be hearsay and inadmissible unless it qualified as an exception to the hearsay rule. *McCormick on Evidence* § 294 at 590 (2nd ed. 1972). One such exception is "state of mind", which allows the declaration to be received into evidence as an accurate depiction of the declarant's state of mind at the time the declaration was made. The rationale for admitting the declaration is twofold. First, there can be no "memory"

problem, and second, no one could better perceive the declarant's state of mind than the declarant. Under this theory, the declarant's statement is admissible as long as circumstances do not indicate the declarant was insincere. McClain, *Maryland Evidence,* § 803(3).1 at 358. *See generally Nash v. State,* 69 Md.App. 681, 519 A.2d 769 (1987) (no abuse of discretion in allowing social worker's testimony, over hearsay objection, that child victim appeared surprised and frightened that witness knew of abuse); *Ebert v. Ritchey,* 54 Md.App. 388, 458 A.2d 891 (1983), *cert. denied,* 467 U.S. 1210, 104 S.Ct. 2399, 81 L.Ed.2d 356 (1984) (proper to admit the decedent's statement of testamentary intent).

■ Under this analysis, Kirkland's statement can be admitted to show the state of mind he had at the time he made the statement. His assertion is probative of his alleged willful, deliberate and premeditated state of mind at the time of the criminal act despite the fact that the assertion was made prior to the act, it was made shortly before the murder took place. The fact that his state of mind could have continued through the short period of time until the criminal act serves to negate his claim of self-defense. The hearsay exception tolerates the use of assertions in this manner when they tend to indicate a state of mind existing shortly after the statement was made. In § 294, McCormick states:

> Although it is required that the statement describe a state of mind or feeling existing at the time of the statement, the evidentiary effect of the statement is broadened by the notion of the continuity of time of states of mind.

*McCormick on Evidence,* § 294 (3d ed. 1984).

### (2)

■ Kirkland's declaration is also admissible as circumstantial evidence tending to prove that he later committed

the criminal act. McCormick states that "the probative value of a state of mind obviously may go beyond the state of mind itself". McCormick, *supra*, at § 295. Indeed, it may go so far as to prove subsequent conduct:

> Despite the failure until fairly recently to recognize the potential value of statements of state of mind to prove subsequent conduct, it is now clear that out-of-court statements which tend to prove a plan, design, or intention of the declarant are admissible, subject to the usual limitations as to remoteness in time and perhaps apparent sincerity common to all statements of mental state, to prove that the plan, design, or intention of the declarant was carried out by the declarant.

*Id.* The leading case for this proposition is *Mutual Life Insurance Co. v. Hillmon*, 145 U.S. 285, 12 S.Ct. 909, 36 L.Ed. 706 (1892). In *Hillmon*, the matter chiefly contested was the death of the insured, John Hillmon. The resolution of that issue depended upon whether the body found at Crooked Creek, Kansas was Hillmon's body or the body of his traveling companion Walters. The evidence sought to be admitted were letters written by Walters indicating his intention of traveling with Hillmon. The Court found these declarations of intent admissible to prove other matters which were in issue, e.g., whether Hillmon went to Crooked Creek and whether the dead body was his. Maryland is in accord with *Hillmon*. *Md. Paper Products Co. v. Judson*, 215 Md. 577, 590, 139 A.2d 219 (1958); *Sobus v. Knisley*, 11 Md.App. 134, 273 A.2d 227 (1971); McLain, *Maryland Evidence*, § 803(3).1 at pp. 361–1. Simply stated, the *Hillmon* doctrine provides that when the performance of a particular act by an individual is an issue in the case, his intention (state of mind) to perform that act may be shown. Kirkland's declaration indicated an intent to kill Andrew Church, who later died due to gunshot wounds inflicted by Kirkland. The *Hillmon* Doctrine allows the trial court to admit Kirkland's statement as circumstantial evidence that he carried out his intention and performed the act.

(3)

The third theory under which Kirkland's threat to kill Church can be received into evidence is as an admission relevant to the issue of premeditation. Under this exception, a party is free to introduce anything in the nature of an admission an opposing party has said or done which is relevant to the case. *Aetna Casualty & Sr. Co. v. Kuhl,* 296 Md. 446, 463 A.2d 822 (1983) (admissions are the words or acts of a party-opponent ... offered as evidence against him). The rationale behind the hearsay exception for admissions of a party-opponent is simply that the general purpose for excluding hearsay statements is inapplicable to statements for which one is responsible: a party cannot complain of an inability to cross-examine himself. *Lawson v. State,* 25 Md.App. 537, 549–50, 335 A.2d 135, *cert. denied,* 275 Md. 752 (1975); *Hodge v. Duley,* 22 Md.App. 392, 397–99, 323 A.2d 627, *cert. denied,* 272 Md. 743 (1974). Furthermore, there can be no question of the relevancy of Kirkland's statement since it goes directly to the assessment of his claim of self defense.

Although not directly referred to as such, a number of Court of Appeals cases have admitted statements such as Kirkland's for purposes of proving premeditation. *See generally Knowles v. State,* 192 Md. 664, 669, 65 A.2d 179 (1949) (prior threats against deceased are admissible in the trial of an indictment for murder as proof of premeditation); *Esterline v. State,* 105 Md. 629, 632, 66 A. 269 (1907) (quoting *Wharton's Criminal Evidence,* Sec. 756) (declarations of intention and threats are admissible because from them guilt may be logically inferred. To make the threats admissible there must be some kind of individualization showing that the person injured was within the scope of the threats.) Based on the foregoing, evidence of Kirkland's declaration would also be received under the admission of a party-opponent exception to the hearsay rule.

JUDGMENTS AFFIRMED;
COSTS TO BE PAID BY APPELLANT.