**SOUTHERN WAREHOUSE CORP. v. SCOFIELD, Collector of Internal Revenue. et al.**

**Civ. No. 6352.**

United States District Court
S. D. Texas, Houston Division.

Nov. 19, 1952.

---

8. United States Fidelity & Guaranty Co. v. United States, 201 F.2d 118.

554

Eastham & Simpson, Houston, Tex. (O. S. Simpson, Houston, Tex.), for plaintiff.

Brian S. Odem, U. S. Atty. of Houston, Tex., for defendants.

## CONNALLY, District Judge.

Plaintiff here seeks a refund of certain taxes allegedly illegally assessed and collected from them by the defendant collector. The taxes in question are withholding taxes on wages, taxes under the Federal Insurance Contributions Act, 26 U.S.C.A. § 1400, and taxes under the Federal Unemployment Tax Act, 26 U.S.C.A. 1600. They cover employees of one J. W. Gaddy from August 14, 1945 through October 30, 1945.

Many of the facts are stipulated, and I refer to and adopt such stipulation. At all material times, the plaintiff has been engaged in the business of warehousing and processing rice. It owns and operates several warehouses and rice drying plants in this area. On April 23, 1945, plaintiff entered into a contract with J. W. Gaddy, a general contractor, under terms of which Gaddy was to construct a rice drying plant for the plaintiff in Houston, Texas, according to plans and specifications which had been prepared by the architectural firm of Finger and Rustay. The contract price was $129,400, and provided for monthly progress payments of eighty-five percent of the value of labor and materials incorporated in the work or materials stored at the site, based on the certificates of the aforementioned architects. Certain extras later incorporated in the work raised the contract figure to about $180,000.

Gaddy furnished plaintiff a performance bond in connection with such contract, with United States Fidelity and Guaranty Company as surety. The bonding company procured an indemnity agreement, signed by H. J. Pfeiffer, a partner of the Pfeiffer Electric Company, electrical contractors, whereby Pfeiffer agreed to protect the surety against loss under its bond. Pfeiffer was not in the business of writing such indemnity agreements, but was induced to do so by officers of the plaintiff who assured him that he would suffer no loss. Pfeiffer had a substantial contract for electrical work in connection with the same job directly with plaintiff, had done other work for plaintiff in the past, and executed the indemnity agreement in favor of bonding company as a good-will gesture toward the plaintiff.

The work progressed smoothly for awhile, with several progress payments being made by the plaintiff to Gaddy, based on certificates of the architects. During the course of the construction, however, it became evident to all concerned that Gaddy was in financial difficulties and likely would be unable to complete the job without assistance. The architects declined to issue further certificates of partial completion. Plaintiff put bonding company on notice of these facts, and that the bonding company might be called upon to complete the work. The bonding company promptly gave Pfeiffer the same information.

As the one ultimately liable in the event of loss, Pfeiffer immediately interested himself in the status of the work. On investigation, he satisfied himself that Gaddy had certified falsely that many bills had been paid which in fact were unpaid, and that Gaddy had diverted the progress payments from this job to other jobs or to his own personal uses. Despite this reprehensible conduct, Pfeiffer and the bonding company felt that the loss would be minimized if Gaddy continued. Therefore, Pfeiffer undertook two steps in an attempt to minimize his loss. First, he approached officers of the plaintiff corporation with the proposal that plaintiff voluntarily increase the contract price so that, in effect, plaintiff would bear a part of the loss in prospect. Plaintiff agreed to bear one-half of such loss, so long as it did not exceed $35,000 (so that plaintiff's contribution did not ex-

ceed $17,500). Second, he secured an agreement from all concerned whereby future payments from plaintiff would be deposited in a special account; and to assure that these funds found their way directly into the job, the signatures of both Gaddy and Pfeiffer were required for withdrawals from this special account.

Plaintiff was induced to make the contribution mentioned above by reason of its desire to bring about a completion of the structure in time for the coming rice season, and perhaps by reason of some moral obligation to protect Pfeiffer.

Thereafter, Pfeiffer guarded the payments which were made from the special account very closely, and he joined with Gaddy in signing payroll and other checks drawn on that source. Pfeiffer became suddenly ill, however, and needed someone to act as cosignator in his stead. With the concurrence of bonding company and plaintiff, one Tomlinson was selected. Tomlinson was regularly employed as auditor by the plaintiff corporation, and plaintiff consented that he devote such time as might be necessary to serve in this capacity. Thereafter, the checks on the special account were signed by Gaddy and Tomlinson.

During this period, the payments by plaintiff into the special account were doled out only after careful scrutiny. In several instances, these partial payments were made in the identical amount of Gaddy's weekly payroll. In some five or six instances, checks were made by plaintiff directly to a Gaddy employee. These latter amounts were charged on plaintiff's books against the job and treated as advances, as were the other payments.

When the job was finally completed, the additional $17,500 contributed by plaintiff had been consumed, and Pfeiffer suffered a loss of approximately $40,000.

Throughout the course of the construction (and including the period of time in question here), Gaddy made quarterly returns to the defendant Collector of Internal Revenue, which reflected that the employees were his own and that the taxes which should have been withheld from their wages constituted his obligation. Gaddy failed to pay these taxes, and others which he owed to the Government from other jobs. After efforts to collect from Gaddy met with little or no success, the Collector assessed and collected the taxes in question from the plaintiff corporation, contending that during the period in question plaintiff was the employer of Gaddy's employees, as defined in Section 1621(d) (1) of Title 26 U.S.C.A.

### Findings of Fact.

(1) All of the construction work above referred to was done and performed by J. W. Gaddy, contractor, through his own superintendents, foremen, and workmen; these parties worked exclusively for Gaddy and were hired, supervised, directed, controlled and discharged solely by Gaddy. Gaddy's employees were not subject to control by plaintiff in the means, method or manner of performance of their work.

(2) The few instances in which payment was made by plaintiff to Gaddy in the exact amount of Gaddy's weekly payroll did not constitute the plaintiff as the employer, as that term is defined in Section 1621(d) (1), and did not subject plaintiff to liability for the taxes in question. The fact that the figures were identical resulted from the care being taken by Pfeiffer and bonding company to assure that the payments made by plaintiff actually were used in the construction of this particular job.

(3) In those instances where the plaintiff issued its check directly to Gaddy's employees, in each instance this resulted from the fact that the employee in question was being discharged and was entitled to his wages immediately; and when Gaddy and Pfeiffer, and later Gaddy and Tomlinson, were not readily available for issuing a check upon the special account, plaintiff paid such employees as an accommodation to all concerned and charged such payment as an additional advance against the contract. Defendant has conceded that it makes no claim as to the trifling amount of tax resulting from these payments alone, but offered, and points to, the evidence as tending to show that plaintiff was the employer of all of the employees.

(4) Except as reflected in the next preceding paragraph, plaintiff did not have

control of the payment of the wages of Gaddy's employees, but simply advanced to Gaddy, as progress or partial payments, the funds from time to time with which Gaddy (with countersignature of Pfeiffer, and later Tomlinson) paid his own employees.

### Conclusions of Law.

1:—All of the statutory requirements for the filing of this action have been met, and the Court has jurisdiction.

2:—Plaintiff, during the period of time in question, was not the employer of the Gaddy employees, as that term is used in the above cited statute.

3:—The taxes in question were illegally assessed and collected, and the plaintiff is entitled to recover in the amount stipulated, William Simpson Const. Co. v. Westover, D.C., 100 F.Supp. 125.

Clerk will notify counsel.