726 A.2d 807 ·

**SUBURBAN HOSPITAL, INC.**

**v.**

**MARYLAND HEALTH RESOURCES PLANNING COMMISSION.**

**No. 562, Sept. Term, 1998.**

Court of Special Appeals of Maryland.

April 1, 1999.

Jack C. Tranter (Thomas C. Dame and Gallagher, Evelius & Jones, LLP, on the brief), Baltimore, for appellant.

Suellen Wideman, Assistant Attorney General (J. Joseph Curran, Jr., Attorney General, and Margaret Ann Nolan, Assistant Attorney General, on the brief), for appellee.

Before SALMON, EYLER and KENNEY, JJ.

KENNEY, Judge.

Appellant, Suburban Hospital, Inc. ("Suburban"), sued appellee, the Maryland Health Resources Planning Commission ("the Commission"), in the Circuit Court for Baltimore City, seeking to void the Commission's adoption of the Open Heart Surgery Section of the State Health Plan (the "proposed OHS Section"). Suburban alleged that the Commission violated the Open Meetings Act, Md.Code (1984, 1995 Repl.Vol., 1998 Supp.), § 10–501 *et. seq.* of the State Government Article ("S.G."), by deliberating about the proposed OHS Section in a meeting closed to the public. The Commission moved to dismiss Suburban's complaint or, in the alternative, for summary judgment. After a hearing on January 6, 1998, the circuit court granted the motion for summary judgment by Order on January 14, 1998. Suburban appeals from the circuit court's decision.

### Facts

The circuit court succinctly explained the factual background to this case:

> The Maryland Health Resources Planning Commission not only establishes the State's health plan, but it also reviews requests by health facilities to provide specific health services. Md. Health General Code Ann. § 19–101, *et seq.* According to the statutory scheme, the State health plan must include (1) a description of the components that should comprise the health care system; (2) the goals and policies for Maryland's health care system; (3) identification of unmet needs, excess services, minimum access criteria, and services to be regionalized; (4) an assessment of the financial resources required and available for the health care system; and (5) the methodologies, standards, and

criteria for certificate of need review. Md. Health General Code Ann. § 19–114(a)(2).

On April 1, 1996, Suburban and Holy Cross Hospital of Silver Spring, Inc. filed letters of intent in which they proposed establishing new open heart surgery programs in the Washington Metropolitan Region. On September 27, 1996, they filed the appropriate Certificate of Need applications. The Commission, relying upon the notion that there was not a need for additional open heart surgery programs in the area, denied both applications. On June 18, 1997, the Circuit Court for Baltimore City reversed the Commission's decision and ordered the Commission to review the merits of the Suburban and Holy Cross applications "in a prompt and timely fashion." While an appeal of the Court's order is pending in the Court of Special Appeals, Suburban filed a modified application with the Commission.

Subsequently, the Commission updated and revised the State Health Plan Chapter on Cardiac Surgery and Therapeutic Catheterization Services. After extensive public comment, several public hearings and finally publication in the Maryland Register, the Commission considered the proposed Open Heart Chapter regulation for promulgation as a final rule at its November 11, 1997 meeting.

After discussion of the proposed Open Heart Surgery ("OHS") Section at the meeting, Commissioner Joan Harris moved for the adoption of the OHS Section as proposed, a version that would have precluded approval of a new open heart surgery program in the Washington metropolitan region (the "Region"). Before any action was taken on that motion, Commissioner Marvin Schneider, M.D., proposed an amendment (the "Schneider Amendment") to alter the method of measuring open heart surgery program capacity in the proposed OHS Section, thereby permitting additional open heart programs in the Region if certain criteria were met.

After more discussion, Chairman George S. Malouf, M.D., called for a vote on the Schneider Amendment. After six of the nine commissioners voted in favor of its adoption, James

Stanton, the Commission's Executive Director, interrupted the vote to urge Commissioners who voted for the Schneider Amendment to reconsider.

Without finishing the vote, the Commissioners discussed the possible need to republish the entire proposed OHS Section in the Maryland Register as a proposed rule if the Schneider Amendment was adopted, and asked C. Frederic Ryland, an Assistant Attorney General and General Counsel to the Commission, if adding the Schneider Amendment would necessitate republishing the entire proposed OHS Section. Mr. Ryland stated that the promulgation process would have to be repeated. Several Commissioners and staff members who opposed the Schneider Amendment opined that adding the Amendment would require additional public hearings. Chairman Malouf eventually called for a second vote on the Schneider Amendment. Two Commissioners changed their position, resulting in a five to four vote against the Amendment.

Commissioner Schneider requested that the Commission stay the execution of its decision until Mr. Ryland could provide a "more considered thoughtful opinion" about the procedural ramifications of altering the proposed OHS Section. Commissioner Ruth Spector then moved for reconsideration of the vote that rejected the Schneider Amendment. Before action was taken on that motion, the Commissioners unanimously voted to meet in a closed "executive session" to obtain advice from counsel. The Commission held a thirty-minute closed session. The meeting minutes do not detail any of the events of the closed session.

After the Commission returned to public session, Chairman Malouf brought up the pending motion to reconsider, which Commissioner Spector immediately withdrew. Chairman Malouf stated that the Schneider Amendment was defeated and that the Commission would consider the original motion, i.e., the proposed OHS Section, without any amendment. The

Commission then voted seven to two to approve the unamended proposed OHS Section.

Commissioner Walter Hall immediately stated:

Mr. Chairman, I would like to request that we ask the staff to consider a petition to amend the section of the plan and examine a number of issues specifically focused on the hospitals and environmental suburbs of the District of Columbia[,] issues such as the relationship of the rates set by our own cost review commission for the Maryland hospitals, vis-vis [sic] the costs and charges within the District of Columbia hospitals. Also issues such as an analysis of what the region really is as far as the hospitals in the Maryland suburbs of the District of Columbia that are located in Montgomery and Prince George's County and so forth and I think there will be a number of additional analysis [sic] that the staff may want to consider as they look at this issue and I think that I would like to put forward that request and ask the staff if they would consider that.

[Chairman Malouf]: Smokey [Mr. Stanton], did you get the petition in writing?

Mr. Stanton: Yes, I did.

The request was unanimously approved.

Suburban sued the Commission, alleging that, instead of merely receiving legal advice in the closed meeting, the Commission violated Maryland's Open Meetings Act by discussing substantively the Schneider Amendment, the proposed OHS Section, and a petition process to assess the need for additional OHS programs.

### Questions Presented

Suburban presents three questions for our review, which we have re-worded and consolidated:

1. Must Suburban demonstrate that Commission members knew they were violating the Open Meetings Act ... to maintain an enforcement action under State Government Article § 10–510?

2. Did Suburban satisfy its burden of demonstrating sufficient grounds to avoid summary judgment?

We answer the first question in the negative, and the second in the positive. Accordingly, we shall reverse.

### Discussion

 A trial court shall enter judgment in favor of or against a party moving for summary judgment if the motion and response show that there is no genuine dispute as to any material fact and that the party in whose favor judgment is entered is entitled to judgment as a matter of law. Md. Rule 2–501(e). When considering a summary judgment motion, a trial court makes no findings of fact. *Dobbins et ux. v. Washington Suburban Sanitary Commission*, 338 Md. 341, 345, 658 A.2d 675 (1995). The trial court decides whether a genuine issue of material fact exists to prevent the entry of summary judgment. *Fearnow v. Chesapeake & Potomac Telephone Co. of Maryland, et al.*, 104 Md.App. 1, 48, 655 A.2d 1 (1995), *aff'd in part and rev'd in part*, 342 Md. 363, 676 A.2d 65 (1996). When reviewing a trial court's decision to grant a summary judgment motion, we examine "simply whether the trial court was legally correct." *Beatty v. Trailmaster Products, Inc., et al.*, 330 Md. 726, 737, 625 A.2d 1005 (1993) *(citing Heat & Power v. Air Products*, 320 Md. 584, 591, 578 A.2d 1202 (1990)). An appellate court ordinarily should review a grant of summary judgment only on the grounds relied upon by the trial court.[1] Maryland Rule 8–131(a); *Blades v. Woods*, 338 Md. 475, 478, 659 A.2d 872 (1995); *Gross et ux. v. Sussex Inc., et al.*, 332 Md. 247, 254 n. 3, 630 A.2d 1156 (1993).

---

1. The exception to this rule is that, when "the alternative ground is one upon which the circuit court would have had no discretion to deny summary judgment, summary judgment may be granted for a reason not relied upon by the trial court." *Davis v. Goodman et al.*, 117 Md.App. 378, 395 n. 3, 700 A.2d 798 (1997) (citing *Blades*, 338 Md. at 478, 659 A.2d 872). Only when the motion is based upon a purely legal issue may an appellate court affirm on a ground not relied upon by the trial court. *Davis*, 117 Md.App. at 395 n. 3, 700 A.2d 798.

A grant of a summary judgment motion is appropriate only when the moving party meets a two-part test. *Fearnow*, 104 Md.App. at 48, 655 A.2d 1 (*citing Gross*, 332 Md. at 255, 630 A.2d 1156).

The movant for summary judgment must (i) clearly demonstrate the absence of any genuine issue of material fact, and (ii) demonstrate that it is entitled to judgment as a matter of law.

To satisfy the first part of this test, the moving party must present the material facts necessary to obtain judgment and demonstrate that there is no dispute as to any of those facts. A material fact is one that will "somehow affect the outcome of the case." It is the burden of the movant to "identify the portions of the record that 'demonstrate the absence of a genuine issue of material fact.' "

Once the movant makes this showing, the burden shifts to the non-moving party to identify "with particularity the material facts that are disputed." Md. Rule 2–501(b). Neither general allegations of facts in dispute nor a mere scintilla of evidence will suffice to support the non-movant's position; there must be evidence upon which the jury could reasonably find for the non-moving party. In other words, the opposing party " 'must do more than simply show there is some metaphysical doubt as to the material facts.' "

In ruling on a motion for summary judgment, the court must consider the motion and response submitted by the parties in a light most favorable to the non-moving party. Thus, summary judgment is inappropriate where the evidence is susceptible to more than one inference. Furthermore, the non-moving party " 'is to be given the benefit of all reasonable doubts in determining whether a genuine issue exists.' "

*Fearnow*, 104 Md.App. at 48–50, 655 A.2d 1 (citations omitted).

## I.

In an action pursuant to the Open Meetings Act, the public body is presumed to have complied with the Act, and the

complainant has the burden of proving the violation. S.G. § 10–510(c). Suburban argues that the Commission improperly conducted deliberations and debate in its closed "executive session" on November 11, 1997. Maryland's Open Meetings Act provides, in pertinent part, that a public body may meet in closed session to "consult with counsel to obtain legal advice." S.G. § 10–508(a)(7). State Government § 10–508(b) states that "[a] public body that meets in closed session under this section may not discuss or act on any matter not permitted under subsection (a) of this section." [2] "The exceptions in subsection (a) of this section [allowing closed meetings] shall be strictly construed in favor of open meetings of public bodies." S.G. § 10–508(c).

Before a public body meets in a closed session, "the presiding officer shall: (i) conduct a recorded vote on the closing of the session; and (ii) make a written statement of the reason for closing the meeting, including a citation of the authority under this section, and a listing of the topics to be discussed." [3] S.G. § 10–508(d)(2).

## II.

The Commission contends that Suburban cannot maintain an action under S.G. § 10–510 because Suburban cannot prove that the Commission "willfully" failed to comply with the Open Meetings Act. State Government § 10–510 provides that, if a public body fails to comply with § 10–508, a circuit court, upon petition of an adversely affected person, may consolidate proceedings, issue an injunction, or determine the applicability of the Open Meetings Act to a public body. In addition, the court may, "if the court finds that a public body willfully failed to comply with § 10–505, § 10–506, § 10–507, or § 10–509(c)

---

2. S.G. § 10–508(a) contains fourteen valid motives for a public body to meet in closed session; only legal consultation is relevant to this case.

3. The Commission apparently did not perform the second of these requirements. Administrative violations of this type subject a public body's actions to the possibility of injunctive or declaratory relief, but they do not render them susceptible to voiding. S.G. § 10–510(d).

of this subtitle and that no other remedy is adequate, declare void the final action of the public body." S.G. § 10–510(d)(4). The Commission suggests that "willfully" is equivalent to "knowingly" and that only a conscious decision to violate the statute merits the voiding of a public body's actions.

■ The Commission's arguments fail in several respects. First, the requirement that a public body must have acted "willfully" only applies to attempts to *void* the public body's acts. The circuit court interpreted "willfully" as "knowingly," and then found that the Commission had therefore not willfully violated S.G. §§ 10–505, 506, 507, or 509(c). Because of this conclusion, the trial court refused the discretionary option, offered to it by S.G. § 10–510(d)(4), of voiding the Commission's actions.

■ State Government § 10–510(d)(2), (3), (5), and (6), however, which provide for injunctive relief, declaratory relief, attorneys' fees, and "any other appropriate relief," respectively, do not require the same finding that the public body "willfully failed" to comply with the Open Meetings Act that § 10–510(d)(4) requires. *See Wesley Chapel Bluemount Association, et al. v. Baltimore County*, 347 Md. 125, 149, 699 A.2d 434 (1997). In addition to being apparent on the face of § 10–510(d), this is evident from the public policy reality that enjoining a public body's action, or issuing a declaratory judgment action, will be less disruptive and more conducive to a balance between citizen complaints and governmental efficiency than would be voiding the public body's actions. Simply put, under the Open Meetings Act, injunctions and declaratory relief are available for a lower threshold of violation than that needed to void a public body's action.

The trial court quoted § 10–510(d)(4) and then stated:

The Court may not void the [Commission's] decision unless it finds that the violation of the Open Meetings Act was willful which has been defined as a voluntary, intentional violation of a known legal duty, such that the "violator knew that what he or she was doing was illegal." *Reisch v. State*, 107 Md.App. 464, 477, 482 [668 A.2d 970] (1995). This

requires the Maryland Health Resources Planning Commission to have had knowledge of the legal requirement and a specific intent to disobey the law. *Reisch* at 476 [668 A.2d 970]. Therefore, *even if the Court accepts all of Suburban Hospital's allegations as fact, Plaintiff [Suburban] failed to demonstrate that a willful violation of the Act occurred. Consequently, the Court* in applying the Act to the present facts *can not void the decision* by the Commission.

■ The trial court then discussed the administrative remedies potentially available to Suburban, and proceeded to grant the Commission's motion for summary judgment. The trial court, however, never discussed Suburban's requests for attorneys' fees, declaratory relief, or injunctive relief, nor did it acknowledge that, under the Open Meetings Act, those remedies do not require the "willful" standard used for requests to *void* a public body's action. The trial court's finding that Suburban had not willfully violated the Open Meetings Act, even if correct, was not sufficient by itself to allow the court to grant summary judgment as to Suburban's requests for attorneys' fees and injunctive and declaratory relief. Without additional findings by the trial court that the Commission did not violate the Act at all, Suburban's requests for these modes of relief enable it to avoid summary judgment on those issues. In other words, the circuit court, in its Order, appears to have applied the more stringent "willful" standard to *all* of Suburban's desired remedies, not just to the request to void the Commission's actions.

■ We note that summary judgment in a declaratory judgment action is "the exception rather than the rule." *Nationwide Mutual Insurance Co. v. Scherr, et al.*, 101 Md. App. 690, 695, 647 A.2d 1297 (1994), *cert. denied,* 337 Md. 214, 652 A.2d 670 (1995) (quoting *Loewenthal v. Security Insurance Co. of Hartford*, 50 Md.App. 112, 117, 436 A.2d 493 (1981)). For instance, in a declaratory judgment action concerning a contract dispute, summary judgment may be granted when there is no dispute as to the *terms* of the documents in issue, but only disagreement as to the *legal interpretation*

of those terms. *Nationwide*, 101 Md.App. at 695, 647 A.2d 1297. In the present case, however, the parties dispute both the legal interpretation of the term "willfully" in the Open Meetings Act and the factual events that may or may not have constituted a violation of the Act.

■ Second, "willfully," in this context, is more accurately defined as "non-accidentally." State Government § 10–510, as just discussed, provides for judicial enforcement of several remedies against a public body when the Open Meetings Act is violated. In contrast to S.G. § 10–510, S.G. § 10–511 provides that a court may impose a civil penalty of up to $100 on a public body member only if the member "willfully participates in a meeting of the body *with knowledge* that the meeting is being held in violation of [the Act]." (Emphasis added). Members of a public body may only incur a civil penalty if they acted willfully *and* knew that they were violating the Act.[4] Section 10–511 imposes individual liability on members of the body, a more personally intrusive penalty than the general curative remedies established by § 10–510 for the public body as a whole. It is therefore consistent that § 10–511 requires a higher standard of violative conduct than § 10–510, which has no scienter requirement.

---

4. The Commission attempts to explain the different standards of § 10–510 and § 10–511 by arguing that the phrase "participates in a meeting" in the latter section does not refer to attendance at the meeting, but only to some greater level of participation in the meeting. The Commission does not endeavor to define this "more than presence" standard for "participates". In *Board of County Commissioners of St. Mary's County v. Guyther, et al.,* 40 Md.App. 244, 246, 389 A.2d 1372 (1978), we held that, for both municipal and private corporations, "a person present but incompetent to act because of disqualification [e.g. because of a conflict of interest] cannot serve as a constituent part of a quorum." In other words, the disqualified board member was disqualified not just for voting purposes but also for the purpose of being counted to establish a quorum. This reasoning suggests that attendance *is* participation. The Commission argues that this conclusion "would force individual members of a public body to give up their right to be *present* at closed sessions they believe are improper." (Emphasis in original). Under the Open Meetings Act, not only do members of a public body have no right to be present at improper closed sessions, but it would appear that they have a duty not to participate, and therefore, not to attend.

If we were to read § 10–511 as prohibiting and punishing the same conduct that is violative of § 10–510, the "with knowledge" phrase in § 10–511 becomes mere surplusage. Viewing terms as surplusage is a disfavored method of statutory construction. *Mayor and City Council of Baltimore et al. v. Hackley, et al.*, 300 Md. 277, 283, 477 A.2d 1174 (1984). Statutes should be read "so that no word, clause, sentence or phrase is rendered surplusage, superfluous, meaningless, or nugatory." *Montgomery County v. Buckman*, 333 Md. 516, 523–524, 636 A.2d 448 (1994) (citations omitted). Reading § 10–510 and § 10–511 with regard for each term, the different phrasing in the two sections implies that they present different standards.

The legislative decision to impose personal penalties on members of public bodies only if those members knew they were violating the Act is consistent with the Act's policy goals. The Act observes that it is "essential to the maintenance of a democratic society" that public business is performed in public and that citizens are able to observe the deliberations and decision-making of public officials. S.G. § 10–501(a). Keeping government operations accessible and visible to the public ensures the accountability of the government to the citizens and increases the faith of the public in their representatives. S.G. § 10–501(b). To support these goals, the policy of the State is to provide the public with adequate notice and opportunity to observe meetings of public bodies. S.G. § 10–501(c).

The Act is not primarily a means to impose strictures on individual members of public bodies; it exists, rather, to guide the procedural practice of public bodies as complete entities responsible to and available to the public. When a public body violates the Act, the Act permits a court to enjoin or void the actions the public body took at the impermissible meeting. These remedies are not in response to the content of the actions taken at the meetings, but to the procedural steps from which the actions emanated. It is the public body as a whole that is being regulated. It is consistent, therefore, that only when the members of the public body display scienter or

evil intent is it appropriate for a court to impose personal penalties on them.

The circuit court, as quoted above, stated that it could not void the Commission's decision unless it found that the violation of the Open Meetings Act was willful, and stated further that willful "has been defined as a voluntary, intentional violation of a known legal duty, such that the 'violator knew that what he or she was doing was illegal.' This requires the ... Commission to have had knowledge of the legal requirement and a specific intent to disobey the law." (Citing *Reisch v. State*, 107 Md.App. 464, 476–477, 668 A.2d 970 (1995), *cert. denied,* 342 Md. 332, 675 A.2d 993 (1996)).

In *Reisch,* we reversed a circuit court conviction because the State failed to prove a willful and knowing violation of a home improvement licensing law. We stated there that,

> [n]otwithstanding appellant's admitted failure to obtain a home improvement license, we agree that the evidence was insufficient to sustain appellant's conviction. We rest our conclusion on the State's failure to establish, beyond a reasonable doubt, that Reisch acted *knowingly and wilfully.* Based on express statutory language, *we reject any claim that the terms "knowingly and wilfully" are mere surplusage* or that the home improvement provisions in issue impose strict criminal liability. We explain.

> The Legislature specifically predicated a criminal penalty for violation of Maryland's home improvement laws on a *knowing and wilful* violation, referencing that language in several key places in the home improvement laws. . . .

*Id.* at 474, 668 A.2d 970 (emphasis added; citations omitted). In *Reisch* we did not specifically differentiate "willfully" from "knowingly;" the terms were used conjunctively, and not separately, in the statute pertinent to that case. That licensing law was intended to punish violations by individual contractors and imposed criminal penalties. The Open Meetings Act provides only for civil penalties.

The parties point to no interpretation by a Maryland appellate court of the term "willfully" as used in S.G. § 10–510.[5] In *Wesley Chapel Bluemount Association, et al.*, 347 Md. at 149, 699 A.2d 434, the Court of Appeals observed that a circuit court's order voiding a county zoning board's actions was inappropriate because the circuit court made no findings that the public body "willfully failed to comply with § 10–505 ... and that no other remedy is adequate."[6] S.G. § 10–510(d)(4). The Court did not, however, define "willfully."

Suburban cites *Stanton v. Machiz*, 183 F.Supp. 719, 725 (D.Md.1960), in which the District Court stated:

*The meaning of the word "willful" depends upon the context in which it appears; and particularly the kind and nature of the statute.* Where the term is used in connection with the statute defining criminal conduct, the word "willful" usually requires something more than deliberate and intentional as opposed to accidental and includes an intent of a wrongful or evil purpose. *But where the statute relates to a civil rather than a criminal penalty the meaning of the word connotes only voluntary and intentional action as contrasted with accidental.* Thus, in *United States v. Illinois Central R. Co.*, 303 U.S. 239, 58 S.Ct. 533, 535, 82 L.Ed. 773 (1938), where the statute imposed a penalty on a common carrier for failure to water livestock after thirty-six

---

**5.** We have recognized that for the purposes of the Maryland Wiretap Act the "term 'willfully' means 'more than intentional or voluntary. It denotes either an intentional violation *or a reckless disregard of a known legal duty.'* " *Fearnow, supra,* 104 Md.App. at 23–24, 655 A.2d 1 (emphasis added) (citing *Earley v. Smoot,* 846 F.Supp. 451, 453 (D.Md. 1994), and *Benford v. ABC,* 649 F.Supp. 9, 10 (D.Md.1986)). We strictly limited that definition's application, however, to cases involving the Maryland Wiretap Act, and stated that the conclusion was driven by federal criminal caselaw. Indeed, "[o]ur holding should not be read as an abrogation, broadening, or modification of how Maryland courts have previously construed wilfulness in other legal contexts." *Fearnow,* at 23–24, n. 20, 655 A.2d 1. The Commission conceded that it has a legal duty to comply with the Open Meetings Act.

**6.** As noted above, the Court in *Wesley Chapel* used a different standard to review requests for injunctive relief and requests to void the public body's actions, because § 10–510(d)(4) uses "willfully."

hours, it was held that the word "willful" did not require proof of an evil intent but that it is sufficient if the failure to act was either intentional or plainly indifferent to the requirements of the statute. [Emphasis added; citations omitted.]

*See American Surety Co. of New York v. Sullivan,* 7 F.2d 605, 606 (2 nd Cir.1925).

In *Kansas v. Palmgren,* 231 Kan. 524, 646 P.2d 1091, *appeal dismissed,* 459 U.S. 1081, 103 S.Ct. 562, 74 L.Ed.2d 927 (1982), the Kansas Supreme Court interpreted the Kansas Open Meetings Law's provision that a civil penalty could be imposed only if a public body member "knowingly violates" the law. Observing that Kansas's Open Meetings Law "is remedial in nature and therefore subject to broad construction in order to carry out the stated legislative intent," the Kansas Supreme Court held that a knowing violation was one caused by willful or purposeful conduct and did not require actual knowledge of wrongdoing. *Palmgren,* 231 Kan. at 531, 646 P.2d 1091. The Kansas Supreme Court therefore imposed a construction even broader than the one we choose, because the court held that "knowingly" did not mean actual knowledge of wrongdoing, and in the present case we are assigning the same definition to the term "willfully."

Maryland's Open Meetings Act's civil penalty provision differs from the Kansas law by requiring "knowledge that the meeting is being held in violation of [the Act]" only before individual liability can be established. S.G. § 10–511. Unlike § 10–511, Maryland's provision for voiding a public body's act does not require express knowledge of a violation. S.G. § 10–510(d)(4).

In light of the public policy expressed in the statute and the language of the statute, we conclude that "willfully" as used in S.G. § 10–510 does not require knowledge that the meeting actually violates the Open Meetings Act, but instead refers to intentional conduct. We also note that the Commission's Executive Director, James Stanton, testified in his deposition that he was well aware of the Open Meetings Act's require-

ments. Even without scienter, an argument could be made that he therefore made a "knowing" violation of the Act because he knew the Act's requirements and nevertheless allegedly persisted with the policy discussion.

## III.

In order to survive the Commission's motion for summary judgment, Suburban, as the non-moving party, must demonstrate that, viewing the facts in the light most favorable to Suburban, the Commission is not entitled to judgment as a matter of law. Suburban opposed the summary judgment motion by referring to the deposition testimony of Richard McAlee, an attorney representing Holy Cross Hospital.

Mr. McAlee testified that Commissioner Ruth Spector called him the day after the Commission's November 11, 1997 meeting and told him that, during the closed session, the Commissioners discussed a proposal for a petition process for hospitals wishing to amend the State health plan. Adopting this petition process would allow the proposed OHS Section to be approved immediately, without change. Mr. McAlee said Commissioner Spector told him that the discussion was conducted mainly by three commissioners and Mr. Stanton, the Commission's Executive Director. Mr. McAlee described it as a "discussion of the need for cardiac surgery in Montgomery County and how to deal with that issue as a policy matter." According to Mr. McAlee's account of Commissioner Spector's statements, the Commission's attorney was not an active participant in this conversation and the focus was deliberative, rather than consultative.

Mr. Stanton gave deposition testimony stating that such a policy discussion did not occur in the closed meeting and that commissioners' comments in the meeting were in the form of questions to counsel. He also stated, however, that Mr. Ryland, the Commission's attorney, only spoke for four or five minutes during the thirty-minute meeting. Commissioner Spector's affidavit did not discuss the events or the substance

of the closed meeting; it simply denied that she discussed with Mr. McAlee what had occurred in the closed meeting.

The Commission contends that Mr. McAlee's testimony about Commissioner Spector's statements is inadmissible hearsay. Md. Rule 5–803 provides that statements by a party opponent, offered against that opponent, are not excluded by the hearsay rule, even though the declarant is available as a witness.

> Admissions are the 'words or acts of a party-opponent, or of his predecessor or representative, offered as evidence against him.' Admissions are considered to be substantive evidence of the facts admitted. A party may offer into evidence against his opponent anything said by him as long as it illustrates some inconsistency with the facts now asserted by the opponent in pleading or in testimony. Admissions do not have to be against the speaker's interest when made.... [T]he speaker need not be, and rarely is, unavailable.

*Aetna Casualty & Surety Co. v. Kuhl*, 296 Md. 446, 455, 463 A.2d 822 (1983) (citations omitted); *Kirkland v. State*, 75 Md.App. 49, 57, 540 A.2d 490, *cert. denied*, 313 Md. 506, 545 A.2d 1344 (1988) ("[A] party is free to introduce anything in the nature of an admission an opposing party has said or done which is relevant to the case.").

 Among the admissions admissible under Md. Rule 5–803(a) are (1) the party's own statement, in either an individual or representative capacity; (2) a statement of which the party has manifested an adoption or belief in its truth; (3) a statement by a person authorized by the party to make a statement concerning the subject; (4) a statement by the party's agent or employee made during the agency or employment relationship concerning a matter within the scope of the agency or employment;[7] or (5) a statement by a co-conspirator of the party in furtherance of the conspiracy.

---

7. Maryland common law once limited vicarious admissions to those made by a party's employee who was authorized to make admissions on

■ As a member of the Commission who was present at the meeting at issue, Commissioner Spector's statements, as allegedly recounted to Mr. McAlee, are certainly relevant to the case. If believed, they could establish a *prima facie* case for a violation of the Open Meetings Act by the Commission as a whole and by the members individually. Under Md. Rule 5-803, they are admissible as party admissions.

■ Because we must consider the motion and response in the light most beneficial to Suburban, for the purposes of this appeal we must consider Mr. McAlee's testimony to be true. Findings of fact and credibility determinations are not to be made. The crucial issue then becomes whether this testimony is sufficient to defeat the Commission's motion for summary judgment, i.e., whether the Commission's discussion exceeded the rationale allowed by S.G. § 10-508(a)(7) for a closed meeting: "consult[ing] with counsel to obtain legal advice."

■ We conclude that, viewing Commissioner Spector's affidavit and the testimony of Mr. McAlee and Mr. Stanton in the light most favorable to Suburban, the discussions Mr. McAlee described exceed consultation to obtain legal advice. A fact-finder could choose to believe Mr. Stanton and Commissioner Spector, and disbelieve Mr. McAlee, but that is not the

---

behalf of the party. *Burkowske v. Church Hospital Corp.*, 50 Md.App. 515, 519-521, 439 A.2d 40 (1982). In 1991, however, the Court of Appeals held that "the traditional common law rule on admissions by agents has proven to be too restrictive and unsound." *B & K Rentals and Sales Co., Inc. v. Universal Leaf Tobacco Co. et al.*, 324 Md. 147, 158, 596 A.2d 640 (1991). The Court therefore decided "to join the substantial majority of states adopting the principle embodied in F.R.E. 801(d)(2)(D)." *Id.* at 153, 596 A.2d 640.

> Henceforth, the hearsay rule does not operate to exclude a declaration that is "offered against a party and is ... a statement by a party's agent or servant concerning a matter within the scope of the agency or employment, made during the existence of the relationship...." F.R.E. 801(d)(2)(D). There is no requirement that the agent have "speaking authority" or that the agent's statement was part of the *res gestae*.

*Id.* at 161-162, 596 A.2d 640. The Commission's response in this case has been that the discussion at the closed meeting was limited to its stated purpose of consulting with counsel for legal advice and not to any limited scope of agency related to Commissioner Spector.

issue we face. Suburban's pleadings and deposition testimony were sufficient to overcome the Commission's Motion for Summary Judgment. As noted above, the circuit court did not resolve Suburban's requests for declaratory and injunctive relief.

## IV.

The circuit court concluded its Memorandum Opinion by stating:

> Furthermore, even if the Maryland Health Resources Commission violated the Open Meetings Act, an alternative and suitable remedy is available to Suburban Hospital. Private entities not satisfied with the public policy derived from legislative forums are permitted to petition the appropriate Commission to amend their actions. Here, the facts indicate that Suburban Hospital failed to petition the Commission to amend their plans resulting from the November 11, 1997 meeting. Consequently, even if the Court found a willful violation of the Open Meetings Act, it could not void the final actions of the Commission because an alternative remedy is available to Suburban Hospital.

The Open Meetings Act does not require an aggrieved party to petition the public body in question to correct its allegedly illegal conduct.[8] The Act merely states that "[t]his section does not *affect or prevent* the use of any other available remedies," § 10–510(a)(3) (emphasis added); it does not *require* the use of other available remedies. Section 10–510(d)(4) states that "[a court may,] *if the court finds* that a public body willfully failed to comply with § 10–505, § 10–506,

---

8. In related provisions, the Act states, "A person may file a petition under this section without seeking an opinion from the State Open Meetings Law Compliance Board." § 10–510(e)(1). The Act requires complaining parties to file their complaints within 45 days of the alleged violation or within 45 days after the public body includes in the minutes of an open session information pertaining to a previous closed session at which a violation allegedly occurred. § 10–510(b)(2),(3). If the limitations period were not tolled, this brief time period would make a requirement of re-petitioning the public body onerous.

§ 10–507, or § 10–509(c) of this subtitle and *that no other remedy is adequate,* declare void the final action of the public body." (Emphasis added.) This section grants the court the ability to decide whether other remedies are adequate; it does not bar plaintiffs from bringing Open Meetings Act issues before the court. We note, as we did above, that § 10–510(d)(4) applies only to the *voiding* of public body actions, and not to injunctions, declaratory relief, or attorneys' fees. Even were a court to find that adequate alternative remedies existed, the court could still grant the three latter forms of relief, all of which Suburban has requested.

It is insufficient, however, to assign parties aggrieved by illegal actions of public bodies the task of asking those public bodies to redress their own actions. The Open Meetings Act and other statutes that detail proper governmental procedures exist so that parties with legitimate grounds for complaint can ask the courts to enjoin illegal acts or declare those acts to be illegal and/or void. If the Commission violated the Open Meetings Act, its actions were illegal, and the issue was improperly characterized in the Memorandum Opinion as mere dissatisfaction "with the public policy derived" from the Commission's actions. Petitioning a public body that has just committed an illegal act to rectify that act will not always, and perhaps rarely, be an adequate alternative remedy.

**JUDGMENT REVERSED. CASE REMANDED TO THE CIRCUIT COURT FOR BALTIMORE CITY FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION.**

**APPELLEE TO PAY COSTS.**